UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ESMERALDA GALARZA**,

Plaintiff,

v.

**COMMISSIONER OF**
**SOCIAL SECURITY**,

Defendant.

Case Number 1:10 CV 235

Judge Kathleen M. O'Malley

REPORT AND RECOMMENDATION

Magistrate Judge James R. Knepp II

Plaintiff Esmeralda Galarza filed a Complaint (Doc. 1) against the Commissioner of Social Securty seeking judicial review of the Commissioner's decision to deny a period of disability and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

**Factual Background**

Because Plaintiff challenges only the ALJ's conclusions on her mental impairments, she waives any claims regarding the ALJ's determinations regarding physical impairments. *See, e.g.*, *Swain v. Comm'r of Soc. Sec.*, 2010 WL 2294534, *5 (6th Cir.) (noting that failure to raise a claim

in merits brief constitutes waiver). Therefore, the Court will address only those pertinent records below.

In January 2006, Plaintiff reported to Dr. Julia Son that she had trouble sleeping and cried frequently. (Tr. 307). She reported her brother had been murdered four months earlier and she had been sexually abused by her father as a child. (*Id.*). Dr. Son diagnosed Plaintiff with a depressive disorder, prescribed medication and referred her for psychology services. (Tr. 308).

In February 2006, Danielle Humbel, a social worker, performed a mental health assessment on Plaintiff. (Tr. 309-13). Ms. Humbel noted the recent murder of Plaintiff's brother, and Plaintiff reported having flashbacks to the sexual abuse she experienced as a child. (Tr. 310). Ms. Humbel found Plaintiff's appearance unremarkable, her behavior appropriate, her speech clear, and her thought process organized and logical. (Tr. 312). Ms. Humbel also noted that Plaintiff reported difficulty concentrating, and some suicidal thoughts. (*Id.*). Ms. Humbel reported Plaintiff's mood as depressed and anxious. (Tr. 313). She assessed Plaintiff a Global Assessment of Functioning (GAF) score of 51-60.[1] Ms. Humbel diagnosed Plaintiff with post-traumatic stress disorder and major depression and referred Plaintiff to a psychiatrist. (*Id.*).

In March 2006, Dr. Aasia Syed, a psychiatrist, evaluated Plaintiff. (Tr. 314-16). Plaintiff reported crying spells and a depressed mood. (Tr. 314). Dr. Syed reported Plaintiff was cooperative and calm and had a logical thought process. (Tr. 316). He noted she did not have abnormal thought

---

[1] A GAF score of 51-60 "indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th Ed., Text Rev. 2000)). A GAF score of 41-50 "indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

2

processes, and denied suicidal thoughts or intention. He did, however, note that she was distractable and her judgment and insight were poor. (*Id.*). Dr. Syed assessed Plaintiff a GAF score of 51-60. (Tr. 317). He diagnosed post-traumatic stress disorder, bereavement and major depression. (*Id.*). At a follow-up visit in April, 2006, Dr. Syed noted that Plaintiff was stable and not a potential harm to herself or others and that medication was "helpful". (Tr. 327-28).

In July 2006, Richard Halas, M.A., performed a psychological consultative exam on Plaintiff. (Tr. 207-10). He observed that she was cooperative and oriented. (Tr. 207). Mr. Halas noted Plaintiff was tense and anxious and she had a "flat, hesitant, and tentative presentation". (Tr. 207-08). Mr. Halas assessed Plaintiff at a GAF of 45 – indicating serious symptoms – but noted that her "[f]unctional severity is above this level, at 60." (Tr. 210). Mr. Halas noted that Plaintiff is moderately limited in her ability to relate to others based on her depression and anxiety. (Tr. 210). He noted that her ability to follow simple instructions was intact, and her ability to maintain attention to do simple, repetitive tasks in intact. (*Id.*). Mr. Halas explained that Plaintiff's "mental ability to withstand the stresses and pressures associated with most day-to-day work settings is assessed as having marked limitations" and her "psychological problems are likely to become quickly exacerbated if she is placed in a setting that is stressful, fast-paced, or demanding." (*Id.*).

On August 7, 2006, Dr. Patricia Semmelman, Ph.D., reviewed Plaintiff's medical records. (Tr. 219-21). Dr. Semmelman concluded Plaintiff would be moderately limited in her ability to carry out detailed instructions, maintain attention for extended periods of time, or complete a normal work-day and work-week without interruptions. (Tr. 219-20). Dr. Semmelman also concluded that Plaintiff would be moderately limited in her ability to respond appropriately to changes in the work

setting. (Tr. 220). Dr. Semmelman stated Plaintiff could "cope with ordinary and routine changes in a work setting that is not fast paced or of high demand." (Tr. 221).

In August 2006, Dr. Syed evaluated Plaintiff, noting her medications were helpful, Plaintiff was in a good mood and was stable. (Tr. 328). He adjusted the medications because Plaintiff was anxious about an upcoming surgery. (*Id.*). Later that month, Plaintiff had surgery for a brain aneurysm without complication. (Tr. 248).

In October 2006, Plaintiff again visited Dr. Syed, who noted Plaintiff was not doing well because she was upset about receiving large bills for her surgery. (Tr. 330). Plaintiff was "depressed, anxious, tearful, guilty, [and] unable to sleep." (*Id.*). Dr. Syed stated Plaintiff's depression was in remission and that she was stable. (Tr. 330-31). Dr. Syed continued Plaintiff on her current medication and prescribed additional medication for her insomnia. (Tr. 330).

On January 24, 2007, Dr. Syed wrote a brief letter stating that Plaintiff "has Major Depressive Disorder with Psychotic features. There are significant anxiety related issues. Financial stressors have made her illness worsen over last several months. She is on medications for above mentioned disorders." (Tr. 337). The letter also stated: "She is unable to work currently due to her mental health issues." (*Id.*). On this same date, Dr. Syed's treatment notes state: "letter for food stamps given." (Tr. 332).

Dr. Syed continued to treat Plaintiff until August 2007. Throughout this time, he noted repeatedly that her depression was in remission, and often noted she was "stable." (Tr. 332, 358, 361, 365, 383). Dr. Syed diagnosed Plaintiff with bipolar disorder. (Tr. 363, 372). On August 31, 2007, Dr. Syed transferred Plaintiff to Dr. Anna-Lynn Tamayo. (Tr. 356). The referral statement noted Plaintiff "finds current meds, and sup[p]ortive psychother[a]py helpful." (*Id.*).

4

The next available records come from April, 2008, when Plaintiff began seeing Dr. Tamayo. (Tr. 345). Dr. Tamayo noted that Plaintiff "has not followed for a number of months. She [ran] out of her medications 2 months ago, did not renew prescriptions or show[] for office visits because she thought[] she [was] going to be ok and that she [was] cured." (Tr. 345). Plaintiff reported trouble sleeping and hallucinations. (*Id.*). Dr. Tamayo assessed Plaintiff with "recurrence of depression with psychotic symptoms since discontinuing medications." (Tr. 346). Dr. Tamayo restarted Plaintiff on medication. (*Id.*).

In May, 2008, Plaintiff again visited Dr. Tamayo. (Tr. 342). The doctor noted Plaintiff was "[s]till depressed, though less than prior visit." Dr. Tamayo noted medication had helped Plaintiff and she had applied for several jobs. (*Id.*). In June, 2008, Dr. Tamayo noted Plaintiff was "feeling more 'relieved', less crying spells, sleeping better, going out more." (Tr. 340). In August, Plaintiff brought her granddaughter to her appointment with her and stated: "She is my medicine." (Tr. 398). In October, Dr. Tamayo noted Plaintiff was feeling better and that her mood had improved. (Tr. 396). She also noted Plaintiff's improved mood was tied to her son and granddaughter being around. (*Id.*). In November, Dr. Tamayo noted Plaintiff reported being sad because her granddaughter and son left, but she was hopeful they could return soon. (Tr. 387). Throughout this time period, Dr. Tamayo continued Plaintiff on various medications to control her depression.

In January, 2009, Plaintiff again visited Dr. Tamayo with her granddaughter. She reported being in a better mood since her son and granddaughter came back. (Tr. 385). She stated she was having difficulty sleeping. (*Id.*). Dr. Tamayo noted that Plaintiff reported a regular routine – "taking care of her granddaughter, household chores in the daytime." (*Id.*). Dr. Tamayo continued Plaintiff on medication.

From April 21 - 30, 2009, Plaintiff was hospitalized after she reported depression, suicidal thoughts and hearing voices. (Tr. 425). Plaintiff's GAF during the stay was assessed at 35-59. (Tr. 496). Discharge notes from the hospital indicate that by the end of her hospitalization, "[h]er depression lifted" once placed on medication and "[s]he was participating in groups and socializing well." (Tr. 496).

After Plaintiff's hearing before the ALJ, Dr. Tamayo completed a form regarding Plaintiff's ability to do work-related activities. She opined that Plaintiff was moderately limited in some areas and markedly limited in others, as those terms were defined by the form. (Tr. 513-15).

### Procedural Background

Plaintiff filed an application for SSI on February 23, 2006, alleging disability as of January 15, 2004. (Tr. 91). Plaintiff alleged she was disabled because she was nervous, had high blood pressure, and was depressed. (Tr. 95). Plaintiff's claim was denied initially on September 21, 2006, and on reconsideration on May 8, 2007. (Tr. 69-71, 74-76). Plaintiff thereafter sought a hearing. An ALJ held a hearing on June 16, 2009 in Cleveland, Ohio. (Tr. 44-66). Plaintiff appeared with her attorney and testified. Kathleen L. Reis, a vocational expert (VE), also testified at the hearing.

The ALJ found Plaintiff had severe impairments of bipolar disorder and anxiety disorder. (Tr. 16).[2] He then found Plaintiff had:

> the residual functional capacity to perform a full range of work at all exertional levels with certain restrictions. Specifically, Ms. Galarza is able to understand, remember, and carry out simple instructions; she is not able to perform in a fast

---

[2] The ALJ noted that Plaintiff's diagnoses had "varied to include bipolar disorder, major depressive disorder, post traumatic stress disorder and anxiety disorder." (Tr. 16). He explained: "All of these diagnoses refer to the same two mental impairments and, for purposes of this opinion, will be referred to [as] bipolar disorder and anxiety disorder." (*Id.*).

paced production work; and she can have occasional interaction with coworkers and
the general public.

(Tr. 19). He concluded that Plaintiff was not disabled because she could perform a significant

number of jobs, despite her impairments. (Tr. 24-25). The ALJ based this conclusion on the VE's

testimony that a person with the given limitations could perform certain unskilled occupations.  The

ALJ's July 17, 2009 decision (Tr.14-25) became the final decision of the Commissioner following

the Appeals Council's denial of review on January 11, 2010. (Tr. 1-3).  *See* 20 C.F.R. § 404.981.

Plaintiff then filed the instant case seeking judicial review of the ALJ's decision on February

3, 2010. (Doc. 1).

### Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence

is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &

Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a

preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

7

## Standard for Disability

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

8

### Discussion

Plaintiff raises three related objections to the ALJ's decision:

1.  "Does the ALJ's decision violate the treating physician rule?"

2.  "Was the ALJ's residual functional capacity [RFC] determination based upon substantial evidence and/or contrary to law?"

3.  "Did the ALJ's hypothetical comprehensively and accurately portray Plaintiff's mental limitations?"

(Doc. 11, at 1).

### RFC Determination

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927.

### Treating Physician Rule

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(d). In determining how much weight to afford a particular opinion, an ALJ must consider: 1) examining relationship; 2) treatment relationship – length, frequency, nature and extent; 3) supportability; 4) consistency; and 5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* Social Security Ruling (SSR) 96-2p. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective

9

medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Id.* Importantly, the ALJ must give "good reasons" for the weight it gives a treating physician's opinion. *Id.*

### Dr. Tamayo

Plaintiff contends the ALJ did not give Dr. Tamayo's opinion appropriate weight because he "failed to follow Dr. Tamayo's mental RFC, and did not provide 'good reasons' for his failure to do so." (Doc. 11, at 4). Defendant responds that "Plaintiff does not explain how the ALJ's RFC is inconsistent with Dr. Tamayo's opinion." (Doc. 14, at 10).

Dr. Tamayo, Plaintiff's treating psychiatrist, completed a mental RFC assessment on May 31, 2009. (Tr. 513-15).[3] In it, she noted Plaintiff would have *moderate* limitations in her ability to:

---

[3] Dr. Tamayo completed this form after the hearing before the ALJ. Plaintiff argues: "After the receipt of the mental RFC, the ALJ could have held a supplemental hearing, or submitted interrogatories to the Vocational Expert, Kathleen Rice ("VE Rice"), who appeared at the hearing." (Doc. 11, at 4). Plaintiff points to HALLEX I-2-5-60, 1994 WL 637387, which states:

When an ALJ receives new evidence after a VE has provided testimony . . . the ALJ may decide to request the VE to review the new evidence to determine if it affects the VE's testimony or response. If an ALJ so decides, the ALJ must determine whether to receive the additional comments from the VE via interrogatories or testimony at a supplemental hearing.

1) understand and remember simple instructions; 2) carry out simple instructions; 3) make judgments on simple work-related decisions; and 4) interact appropriately with the public, a supervisor, and coworkers. (Tr. 513-14). She also noted Plaintiff would have *marked* limitations in her ability to: 1) understand and remember complex instructions; 2) carry out complex instructions; 3) make judgments on complex work-related decisions; and 4) respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*). Dr. Tamayo explained her findings: "Patient struggling with severe depression manifested by decreased sleep, decreased concentration, has intrusive thoughts of previous traumatic experience that could affect her ability to perform complex tasks at hand[,]" and "Patient has had episodes of irritability or agitation that can be triggered by minor events." (*Id.*).

The form Dr. Tamayo completed defined a "moderate" limitation as "more than a slight limitation . . . but the individual is still able to function satisfactorily"; and defined a "marked" limitation as "serious limitation . . . [with] a substantial loss in the ability to effectively function." (Tr. 513).

The ALJ determined that Plaintiff "is able to understand, remember, and carry out simple instructions; she is not able to perform in a fast paced production work; and she can have occasional interaction with coworkers and the general public." (Tr. 19). In reaching this decision, the ALJ examined Dr. Tamayo's RFC determination – specifically referencing the definitions of "moderate"

---

Defendant is correct, however, that this does not *require* the ALJ to hold a supplemental hearing. As discussed below, the ALJ here incorporated Dr. Tamayo's RFC analysis into his RFC determination and that RFC determination was consistent with the hypothetical question posed to the VE. There was, therefore, no need to hold a supplemental hearing.

and "marked" limitations on the form – and explained that these limitations did not mean Plaintiff was unable to work:

> Although Dr. Tamayo's opinion does impose some marked limitations on Ms. Galarza's ability to perform certain basic work related activities, her opinion also indicates that Ms. Galarza is able to perform simple work with limited interaction with others. The undersigned emphasizes that the restrictions indicated by Dr. Tamayo, her treating physician, are consistent with those determined in this decision.

(Tr. 23).

This conclusion is supported by substantial evidence. (Tr. 513-15).  The ALJ limited Plaintiff to *simple* instructions – consistent with Dr. Tamayo's finding that Plaintiff would have marked difficulty with *complex* instructions.  The ALJ also limited Plaintiff to *occasional* interaction with coworkers and the general public – consistent with Dr. Tamayo's finding that Plaintiff would have a marked limitation in responding to work situations and a moderate limitation in her ability to interact with others in a work setting.

The ALJ stated he gave "the most weight to Dr. Tamayo's opinion as it is supported by her own treatment notes and is consistent with the record as a whole." (Tr. 23). The ALJ, thus, did not reject Dr. Tamayo's opinion without giving good reasons, rather, he incorporated Dr. Tamayo's conclusions into his RFC determination. Contrary to what Plaintiff implies, Dr. Tamayo never concluded that she was unable to work, rather, she opined that Plaintiff would have some limitations in her ability to work. The ALJ's treatment of Dr. Tamayo's opinion – specifically, finding that it was consistent with his RFC determination which included certain limitations – is, thus, supported by substantial evidence and not contrary to law.

12

### Dr. Syed

Although Plaintiff does not address Dr. Syed's evaluation in the discussion section of her brief, she does note that "On January 24, 2007, [Dr. Syed] found that [Plaintiff] is 'unable to work currently due to her mental health issues.'" (Doc. 11, at 2 (quoting Tr. 337)).

As Defendant correctly argues, whether or not Plaintiff is "disabled" is an issue reserved for the Commissioner. 20 C.F.R. § 404.927(e)(1)-(3); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). The ALJ was not required to defer to this determination, therefore, even though Dr. Syed was a treating physician.

Secondly, the ALJ examined Dr. Syed's letter and disregarded it, stating: "Dr. Syed's opinion expressed in her letter simply concludes the claimant is essentially disabled and unable to work, and this conclusion is not well supported. Moreover, the determination of whether someone is disabled is reserved to the Commissioner by regulation." (Tr. 22-23). The ALJ's decision to reject Dr. Syed's opinion in this regard is supported by substantial evidence. Dr. Syed's treatment notes from the same date as the letter indicate Plaintiff is stable and her depression in remission. (Tr. 332). *See* 20 C.F.R. § 404.927(d) (consistency with the record as a whole is one factor in determining how much weight to give a physician's opinion); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). As the ALJ pointed out, under Dr. Syed's treatment, Plaintiff's "prescriptions changed until the right mix of medications was found that controlled her impairments. The medical records also reveal a pattern indicating that [Plaintiff's] symptoms seemed to increase during difficult times in her life,

13

and at such times her prescriptions were adjusted to properly treat her symptoms and help her through the difficulties." (Tr. 21). The ALJ's decision to reject Dr. Syed's conclusory statement that Plaintiff was unable to work is therefore supported by substantial evidence.

**Substantial Evidence Supports the ALJ's RFC Determination**

Plaintiff's second contention – building on her first – is that the ALJ's RFC determination is not based on substantial evidence. Plaintiff presents only two arguments in this regard. She contends the ALJ: 1) "failed to weigh the medical opinions in the record as required by 20 C.F.R. § 404.1527(d)"; and 2) "fail[ed] to explain his rejection of Dr. Tamayo's mental RFC." (Doc. 11, at 4-5). Though she does not discuss them in her brief, in the factual basis for her claims, Plaintiff also points to: 1) Mr. Halas' assessment of Plaintiff at a GAF score of 45; and 2) Plaintiff's April 2009 hospitalization.

The ALJ's RFC determination is, however, supported by substantial evidence. As discussed above, the ALJ did, in fact, explain precisely what weight he gave to each doctor and why. He stated:

> After careful review of all the evidence as a whole, the undersigned gives the most weight to Dr. Tamayo's opinion as it is supported by her own treatment notes and is consistent with the record as a whole. Slightly less weight is given to the State Agency examiner, Mr. Halas, as he did not have the opportunity to review all of the evidence of record.

(Tr. 23). Next, with respect to Dr. Syed, the ALJ stated: "Dr. Syed's opinion expressed in her letter simply concludes the claimant is essentially disabled and unable to work, and this conclusion is not well supported. Moreover, the determination of whether someone is disabled is reserved to the Commissioner by regulation." (Tr. 22-23).  The ALJ thoroughly summarized each doctor's treatment

14

or evaluation of Plaintiff, and appropriately explained the weight he gave to each doctor's opinion in formulating the RFC as required by 20 C.F.R. § 404.927(d).

Quoting *Wilbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988), Plaintiff argues: "Where the '[Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.'" (Doc. 11, at 5). This is true, but Plaintiff does not explain *how* the ALJ *rejected* Dr. Tamayo's mental RFC. As discussed above, there is substantial evidence in the record to support the ALJ's conclusion that his RFC determination was *consistent* with Dr. Tamayo's evaluation of Plaintiff's limitations.

The other facts Plaintiff points to do not dictate a contrary conclusion. First, the ALJ noted that Mr. Halas assessed Plaintiff at a GAF score of 45. The ALJ pointed out, however, that Mr. Halas "still scored her functional severity at 60" and stated: "[i]t must be noted that a GAF score is indicative of an individual's state at the time of assessment only." (Tr. 23). While a GAF score of 45 is indicative of serious symptoms, the ALJ appropriately considered that assessment, and found it not controlling. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."). The ALJ's RFC determination was also supported by other doctors' assessment of Plaintiff at a GAF score of 51-60 – indicating moderate symptoms.  (*See* Tr. 313, 317).

Second, Plaintiff's hospitalization does not negate the ALJ's conclusion. The ALJ noted it was a single incident, brought on by a particular change in Plaintiff's life and "as has been

15

historically shown, Ms. Galarza has difficulty dealing with these life changes." (Tr. 22). When Plaintiff was discharged from the hospital, doctors noted that once on medication, Plaintiff's depression lifted, she was no longer having suicidal thoughts, and she was participating in groups. (Tr. 496). There is thus substantial evidence to support the ALJ's conclusion that Plaintiff's one-time hospitalization did not mean Plaintiff was disabled.

As the ALJ summarized:

Ms. Galarza's symptoms appear to wax and wane, worsening when she experiences a period of difficulty in her life. . . . Each episode was brief, lasting no more than one or two months, and once the medication was appropriately adjusted[,] Ms. Galarza was able to function significantly better.

(Tr. 22).

In light of evidence from Plaintiff's own physicians that Plaintiff was able to function despite her impairments, it was reasonable for the ALJ to conclude that Plaintiff could work if limited to simple work with only occasional interaction with coworkers and the general public. The ALJ's RFC determination is therefore supported by substantial evidence and is not contrary to law.

### Hypothetical Question

Plaintiff lastly contends that the ALJ's hypothetical question to the VE did not accurately characterize her limitations and was not based on the opinions of acceptable medical sources. Defendant responds that this is simply a restatement of Plaintiff's challenge to the RFC, and as such, must fail.

To meet his burden at the Fifth Step, the Commissioner must make a finding "'supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Education & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence

16

may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy*, 594 F.3d at 516-17; *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). The ALJ is only required to include in his hypothetical those limitations he finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

The ALJ asked the VE to:

> assume an individual who is the same age, education and no past relevant work as the claimant. I want you to further assume that this individual is able to perform a full range of exertional work. However, they are limited to understanding and remembering and carrying out simple instructions only in a non-fast-paced production environment such as on an assembly line, is further limited to occasional interaction with co-workers and the general public.

(Tr. 63-64).

Plaintiff contends that this hypothetical failed to "take into consideration the nature and extent of Plaintiff's mental impairments, which are contained in Dr. Tamayo's mental RFC" and "did not precisely incorporate Plaintiff's mental impairment" (Doc. 11, at 6). Plaintiff also argues that the ALJ improperly made medical determinations about Plaintiff's condition.

As noted above, the ALJ's RFC determination was supported by substantial evidence. The ALJ incorporated that RFC into his hypothetical question to the VE. The ALJ's reliance on the VE's response to the hypothetical thus constitutes substantial evidence to support a conclusion that there

17

is work Plaintiff can perform. *See Ealy*, 594 F.3d at 516-17; *Webb*, 368 F.3d at 633. The ALJ's RFC is also supported by medical evidence in the record. Although Plaintiff is correct that ALJs may not render medical judgments, *see Meece v. Barnhart*, 192 F. App'x 456, 464-65 (6th Cir. 2006), the ALJ did not do so in his hypothetical question. Rather, the hypothetical incorporated Mr. Halas' assessment that Plaintiff would have some moderate restrictions, as well as marked limitations in the ability to withstand stresses of day to day work. The hypothetical also incorporated Mr. Halas' finding that Plaintiff's difficulties would be exacerbated in a "stressful, fast-paced, or demanding" setting. (Tr. 210). Mr. Halas' findings were supported by Dr. Tamayo's treatment notes showing Plaintiff functioned relatively well but had ups and downs (Tr. 340, 342, 345, 385, 387, 396, 398), and confirmed by Dr. Tamayo's later mental RFC assessment. Therefore, even though the ALJ did not have Dr. Tamayo's mental RFC evaluation at the time he asked the question, Dr. Tamayo's RFC assessment – which the ALJ incorporated into his RFC determination – was consistent with the hypothetical. The ALJ's conclusion that Plaintiff was not disabled is therefore supported by substantial evidence.

## Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II
United States Magistrate Judge

18

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).